**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1051n.06

**No. 11-3832**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Oct 05, 2012*

DEBORAH S. HUNT, Clerk

CAL TURNER EXTENDED CARE
PAVILION,

     Petitioner,

v.

UNITED STATES DEPARTMENT OF
HEALTH & HUMAN SERVICES, CENTERS
FOR MEDICARE & MEDICAID SERVICES,

     Respondent.

_____/

ON PETITION FOR REVIEW OF AN
ORDER OF THE DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
DEPARTMENT APPEALS BOARD

BEFORE:    GUY and CLAY, Circuit Judges; HOOD, District Judge.[*]

    **CLAY, Circuit Judge.**  Petitioner Cal Turner Extended Care Pavilion appeals a decision of

the Department Appeals Board (DAB) for the Department of Health and Human Services upholding

a finding by an administrative law judge (ALJ) that Petitioner was not in substantial compliance with

42 C.F.R. §§ 483.20(b), 483.20(k)(2), and 483.25(h), and that Petitioner's noncompliance created

"immediate jeopardy." The violations were based on the fact that Petitioner permitted family

_____

    [*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of
Michigan, sitting by designation.

1

members to provide its residents with recliners that had a "lifting" feature, though the facility never used the lifting feature to assist residents and permitted the recliners only for the residents' comfort. The Centers for Medicare and Medicaid Services (CMS) issued a citation and civil monetary penalty finding that Petitioner failed to "assess the resident[s'] use of the remote control lift chair[s]" prior to permitting the residents to have access to the chairs, failed to create a corresponding care plan with respect to the use of the chairs, and failed to remove the chairs from the premises as a potential "accident hazard." (AR 629–70.)

Our review of this case has been made difficult by the government's failure to adequately explain the DAB's decision, the application of §§ 483.20(b), 483.20(k)(2), and 483.25(h) to Petitioner's conduct, the interaction of the regulations with the interpretative or assistive materials such as the Resident Assessment Protocol (RAP), Minimum Data Set (MDS), and State Operations Manual (SOM), and the application of the provisions in Appendix PP of the SOM cited by the DAB to the issues in this case. Moreover, the government's appellate brief misstates the record, therefore undermining its arguments and conclusions. (*See, e.g.*, Resp't. Br. 8 (citing AR 600), 9 (citing AR 433–34), 13 (citing AR 437–41, 446–50, 453–56, 459–64, 471, 510–18, 523–24, 1220), 19 (citing AR 321), 20 (citing AR 10, 314, 410), 23 (citing 314–15, 478, 810).)

Consequently, we are persuaded by Petitioner's argument that nothing in the regulations, or the interpretive documents, would inform Petitioner that it must assess a resident's capability of operating or using a piece of tangible property, such as a recliner that also has a lifting feature, prior to permitting the resident's family members to provide the resident with that piece of property for the resident's comfort. To the extent that the regulatory violations for § 483.20(b) and (k)(2) were predicated in part on the surveyor's finding that the chairs were used as "assistive devices," which

the CMS surveyor and the ALJ believed to be the case (*see* AR 7–9, 629), we find that there is not substantial evidence in the record to support that contention.   42 U.S.C. § 1320a-7a(e); *MeadowWood Nursing Home v. HHS*, 364 F.3d 786, 788 (6th Cir. 2004).  We make that finding partially on the basis that, by the government's own admission, the relevant inquiry is whether the device is *used* as an assistive device and not on the innate qualities of the device (Resp't Supp. Br. 7), and there is no actual direct evidence in the record that any staff member or resident utilized the lifting feature with the intent of improving a resident's physical functioning.  We also find that there is not substantial evidence in the record to show that permitting residents to have access to recliners with a lifting feature created an accident hazard and risk of serious injury or death that was foreseeable to Petitioner under 42 C.F.R. §§ 483.25(h), 488.301.  *Lakeridge Villa Health Care Ctr. v. Leavitt*, 202 F. App'x 903 (6th Cir. 2006); *Maine Veterans' Home v. CMS*, DAB 1975, 2005 HHSDAB LEXIS 54 (Apr. 29, 2005).  Respondent's arguments to the contrary are unpersuasive; the only evidence potentially relevant to this determination is Resident 1's May 17, 2009 fall, but we believe that the record does not support a finding that her fall and subsequent injuries were directly caused by the lift feature of her chair.  (*See* AR 318 (noting that Resident 1 fell after she had left her chair and while she was attempting to walk).)

Finally, we find arbitrary and capricious the DAB's application of §§ 483.20(b) and (k)(2) to Petitioner's conduct.  *Claiborne-Hughes Health Ctr. v. Sebelius*, 609 F.3d 839, 844 (6th Cir. 2010).  The DAB did not adequately justify its reasons for applying those subsections and the corresponding SOM provision(s) to Petitioner, and Respondent has similarly failed to provide any adequate justification or to reasonably explain how or why those regulations were violated.  (*See* AR 31 (citing SOM, App. PP, F272, § 483.20(b) Guidelines).)  Nothing in the plain language of

3

§§ 483.20(b) and (k)(2) appears to apply to Petitioner's cited activity. Accordingly, we are persuaded by Petitioner's arguments and reverse the DAB's order in full.

**Guy, J., dissenting**. The court's conclusion is largely predicated on the following:

> Consequently, we are persuaded by Petitioner's argument that nothing in the regulations, or the interpretive documents, would inform Petitioner that it must assess a resident's capability of operating or using a piece of tangible property, such as a recliner that also has a lifting feature, prior to permitting the resident's family members to provide the resident with that piece of property for the resident's comfort.

The "piece of tangible property" that was used here was an electrically powered recliner that could be used to help raise the chair's occupant to a standing position. The only purpose of such a device is to enable the chair's occupant to get out of the chair unassisted and move about. Here the chair's occupant was not capable of walking unassisted. If the proper assessment had been made and it was determined that the individual in question could not walk unassisted, it follows that such a mechanical assist device should not have been allowed.

In reply to our request for additional briefing, the respondent replied on this issue:

> A skilled nursing facility is required to make an assessment of a resident's use of or capability of operating a device prior to the resident being provided with access to that device.

> Pursuant to the Medicare statute a skilled nursing facility must provide each resident with a comprehensive, accurate, standardized, and reproducible assessment of the resident's functional capacity. 42 U.S.C. § 1395i-3(b)(3)(A); 42 C.F.R. § 483.20. The Secretary has interpreted this provision to include a requirement that a facility assess a resident's ability to use an assistive device safely. The State Operations Manual ("SOM")[] indicates that for a facility to comply with section 483.20(b), it must assess the risks that a device may pose to a resident and not just the device's intended purpose. The Secretary opined that facilities should, therefore, employ a "common sense" approach in evaluating their duty to conduct a comprehensive assessment, providing the broadest and most complete assessment possible. *Id.* To insure

5

the resident is not harmed, the resident's functional capacity and limitations, and ability to use a device safely, should be assessed prior to the resident being provided with access to the device.

I conclude that substantial evidence supports the decision of the DAB, and I would

deny the petition for review.